**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                        :
PETER FUSCO,                                            :
                                                        :          Civil Action No. 14-2116 (SDW)
         Plaintiff,                                     :
                                                        :          **OPINION**
                                                        :
v.                                                      :          December 8, 2014
                                                        :
CAROLYN W. COLVIN,                                      :
Acting Commissioner of Social Security,                 :
                                                        :
         Defendant.                                     :
_____                :

**WIGENTON**, District Judge.

Before this Court is Plaintiff Peter Fusco's request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") decision denying his application for Disability Benefits.  Plaintiff argues in the alternative that (1) the Commissioner's decision should be reversed because there is substantial evidence in the record to support a finding of disability, or (2) the numerous deficiencies in the Commissioner's decision require the case to be remanded for reconsideration.  For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence and therefore must be **AFFIRMED**.

## I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This case arises out of the disability determination made by Administrative Law Judge April M. Wexler (the "ALJ") in her opinion dated July 27, 2012. (See Tr. 24-36). Plaintiff initially filed his claim for disability insurance benefits ("DIB") on February 22, 2011. (Id. at 66). In his DIB claim, Plaintiff alleged that he suffered from degenerative osteoarthritis of the right foot beginning on June 7, 2005, and continuing through his date last insured of March 31, 2006. (Tr. 66, 69). The initial DIB claim was denied on April 18, 2011, based on a finding that Plaintiff's claimed disability was not sufficiently severe. (Tr. 73). Plaintiff requested reconsideration of that determination on May 23, 2011, a request which was ultimately denied on June 22, 2011. (Tr. 78-79). Plaintiff then sought a hearing before the ALJ, which occurred on July 26, 2012 (Tr. 37, 84). The ALJ ultimately agreed with the Social Security Administration's denial of Plaintiff's DIB claim, finding that the Plaintiff "did not have a severe impairment or combination of impairments" as required by 20 C.F.R. 404.1520(c). (Tr. 29).

The ALJ based her decision on a variety of factors, including objective medical evidence, medical expert opinions, Plaintiff's testimony at the July 26, 2012, hearing, and other evidence. (Tr. 30-32). More specifically, the ALJ acknowledged that Plaintiff's medical condition likely produced some discomfort, but she found that Plaintiff lacked credibility with regard to the claimed severity of the condition. (Tr. 31). The ALJ first noted that Plaintiff's doctor reported on June 7, 2005 (the alleged onset date), that Plaintiff was moving around well and had strong range of motion in his right foot. (Tr. 31). The ALJ then went on to recount the treatment regimen that Plaintiff's doctor prescribed, which consisted only of a few prescriptions of Tylenol 3 to treat the Plaintiff's pain. (Tr. 31). Citing to various medical reports, the ALJ ultimately concluded that the evidence

was "insufficient to establish a severe right foot impairment," and that "the claimant was not greatly bothered or limited by his foot pain." (Tr. 31).

The ALJ similarly rejected claims of disability with respect to his right and left shoulders. First, the ALJ found that his alleged right shoulder impairment did not meet the 12-month durational requirement, since Plaintiff first complained of pain in the shoulder in March 2005 and made no complaints regarding the shoulder after May 2005, when the doctor prescribed light exercises to rehabilitate the shoulder. (Tr. 31). With respect to the left shoulder, the ALJ found that there was no severe impairment because of Plaintiff's "lack of complaints or treatment for six years, and his statement in June 2012 that his shoulder pain had only a 2-month history." (Tr. 31-32).

In sum, the ALJ found that the record revealed "only very isolated complaints and sporadic and minimal treatment for all of the claimant's alleged impairments." (Tr. 32). The ALJ placed particular emphasis on the lack of complaints by Plaintiff, finding that the lack of such complaints called into question Plaintiff's claims "of severe and debilitating pain since 2005." (Tr. 32). Furthermore, the Court found Plaintiff's testimony regarding his daily activities during the alleged period of disability to cast serious doubt on his claims of disability. (Tr. 32). In particular, the ALJ pointed to his testimony regarding his caregiving for his elderly parents, which consisted of a number of activities that required him to move about. (Tr. 32). Such activities, the ALJ found, "suggest[ed] exaggeration of the physical limitations [Plaintiff] was experiencing during the relevant time period." (Tr. 32). Finally, the Court noted the lack of any opinion evidence regarding Plaintiff's ability to perform basic work activities. (Tr. 32). In light of all of the above, the ALJ found that Plaintiff did not have a severe impairment or combination of impairment, thus requiring the conclusion that Plaintiff was not disabled. (Tr. 32-33).

Plaintiff then requested review of the ALJ's decision before the Appeals Council, a request that was subsequently denied on January 31, 2014.  (Tr. 1-3).  That denial resulted in the filing of the instant Complaint on April 7, 2014.  (Dkt. No. 1, Compl.).  For the reasons that follow, the ALJ's decision is **AFFIRMED**.

## II.   DISCUSSION

### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision.  42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

### B.  The Five-Step Disability Test

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test.  20 C.F.R. § 404.1520(a)(4).  First, it must be determined whether the claimant is currently engaging in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay.  20 C.F.R. § 404.1572.  If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends.  Jones, 364 F.3d at 503.  If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied.  Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, a disability is conclusively established and the claimant is entitled to benefits.  Jones, 364 F.3d at 503.  Fourth, the Commissioner must ask whether the claimant has "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied.  Id.  Finally, the Commissioner must ask "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'"  20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503.  The

claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

     **C.  Analysis**

     Because the ALJ denied Plaintiff's claim at step two in finding that Plaintiff's impairment was not severe, this Court will focus its analysis only on that step.  This Court finds that the ALJ's determination was supported by substantial evidence in the administrative record.  First, in his medical report following examination of Plaintiff on the alleged onset date of June 7, 2005, Dr. Sicherman noted that "[e]xamination shows [Plaintiff] to walk well.  He has good arched foot. Subtalar and ankle motion is good." (Tr. 295).  This diagnosis flies in the face of Plaintiff's claim that the osteoarthritis in his right foot was so severe that he was prevented from performing basic work functions.  Moreover, Plaintiff has pursued a very conservative course of treatment for the condition, consisting only of a few prescriptions of Tylenol 3.  (Tr. 295).  In the more than nine years since the alleged onset date, Plaintiff has never pursued any other form of treatment for his osteoarthritis.

     Plaintiff's conservative course of treatment for what he claims to be a debilitating impairment is particularly curious in light of the fact that Dr. Sicherman performed an operation to relieve Plaintiff's carpal tunnel syndrome in his right hand on March 14, 2011.  (Tr. 298). Plaintiff attempted to explain away the conservative course of treatment with respect to his foot as resulting from his lack of health insurance (Tr. 49-50), but that testimony does not square with the more aggressive courses of treatment that Plaintiff pursued for other ailments such as the carpal tunnel syndrome.  Indeed, Plaintiff's surgery to relieve the carpal tunnel syndrome in his right hand occurred merely 7-8 months after its initial onset.  (Tr. 284).

Plaintiff's testimony also indicates that he was capable of walking for 10-15 minute periods, albeit with some discomfort, and he never used any type of assistive device such as a cane. (Tr. 49-50).  In addition, he served as the full-time caregiver for his elderly parents during the period in question.  (Tr. 53-54).  His duties included helping his father in and out of bed, cooking, grocery shopping, laundry, and providing any other assistance.  (Tr. 54).  Such activities call into question the extent to which Plaintiff was actually hindered by his right foot ailment.[1]

Perhaps most devastating to Plaintiff's case, however, is the Plaintiff's failure to offer any medical opinion evidence indicating that he was or is unable to perform basic work activities due to his claimed impairment.  Plaintiff's physicians (Drs. Sicherman and Prodromo) offered no opinion on that issue in any of their medical reports.  (See Tr. 172-299).  Indeed, far from indicating any limitation on Plaintiff's ability to work, Dr. Sicherman's assessment of Plaintiff on the alleged onset date of June 7, 2005, indicated that Plaintiff was walking well, had good arch in his foot, and had good motion in his ankle.  (See Tr. 295).  Dr. Prodromo's medical reports, on the other hand, dealt only with Plaintiff's hyperthyroid condition.  (See Tr. 216-37, 267-75).  Thus, the objective medical diagnosis by Dr. Martin Sheehy that Plaintiff did not suffer from a severe impairment is unrebutted in the record.  (See Tr. 68-69).

Taken together, the above facts provide ample justification for the conclusion that Plaintiff failed to carry his burden to show that his claimed impairment is severe.  Therefore, this Court is satisfied that the ALJ's decision to deny benefits is supported by substantial evidence.

---

[1] This Court is similarly satisfied that the ALJ's determinations with respect to Plaintiff's other claimed ailments in his shoulders are supported by substantial evidence. The medical evidence clearly indicates that the claimed right shoulder impairment was non-severe due to failure to meet the 12-month durational requirement.  (See Tr. 211-12).  Likewise, there exists substantial evidence that the claimed left shoulder impairment was non-severe.  (See Tr. 209).

### III.    CONCLUSION

Because this Court finds that the ALJ's decision is supported by substantial evidence in the record, the Commissioner's disability determination is **AFFIRMED**.  An appropriate order will follow.

_s/ Susan D. Wigenton_
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:      Parties